IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **LOCO LURES, LLC DBA V & M BAITS**, <br><br> Plaintiff, <br><br> v. <br><br> **STEVE PARKS**, <br><br> Defendant. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, LoCo Lures, LLC DBA V & M Baits ("V & M"), by and through its attorneys, alleges against Defendant, Steve Parks ("Parks"), as follows:

### NATURE OF THE ACTION

1. V & M brings this action for declaratory judgment of non-infringement and associated relief under the Patent Act [35 U.S.C. §§ 271 and 285] based on Parks' improper assertion of patent rights not covered by any claim of US patent No. 7,774,974 ("'974 Patent"), a copy of which is attached as Exhibit 1. V & M brings this action to prevent Parks from continuing to make objectively baseless, bad faith, false, and misleading allegations that V & M infringes the '974 Patent. In making such allegations, Parks unlawfully seeks to harm V & M's business relationships with present and prospective customers. V & M seeks a declaration that its products do not infringe any valid claims of the '974 Patent and injunctive relief prohibiting the continuation of such conduct by Parks.

## THE PARTIES

2. V & M is a Louisiana limited liability company with a principal place of business address at 1614 EE Wallace Boulevard North, Ferriday, Louisiana 71334. V & M sells fishing equipment, including fishing rods, fishing spinning reels, hooks, baits, lures, *etc*.

3. Parks is an individual who is believed to be a resident of the state of Texas and the patentee of the '974 Patent.

## JURISDICTION AND VENUE

4. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the patent laws of the United States, 35 U.S.C. §§ 1-390.

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a) and 2201(a).

6. This Court has specific personal jurisdiction over Parks who established minimum contacts in this forum through negotiation efforts, by telephone and e-mail, that are purposefully directed at residents of this forum.

7. Venue is proper in this District under 28 U.S.C. §§ 1400(b) and § 1391(b) because V & M resides in this district and a substantial part of the events giving rise to this lawsuit occurred in this District.

## FACTUAL BACKGROUND

8. On February 7, 2025, a person or persons by the name(s) of "Connie Parks," "Craig Besnoy, Esq.," or both at [parksservices@sbcglobal.net] sent an e-mail to V & M, stated that they represent Parks, and made an explicit and direct charge of infringement, specifically alleging that V & M "is infringing, inducing infringement, and contributing to infringement of at least one or

more claims of the '974 Patent" by "importing, using, selling, and offering for sale . . . fishing lures sold under the brands 'Wild Bug'." A copy of this e-mail is attached as Exhibit 2.

9. Sometime between February 7 and February 10, 2025, Stephen Mitchell, a representative of V & M, conferred with Parks over the phone about the alleged infringement.

10. On February 11, 2025, Stephen Mitchell and Jennifer Eames, a principal of V & M, received an e-mail from Brian K. Yost, a patent and trademark attorney, with an attachment of a license agreement that "Parks requires" for V & M to sign. A copy of this e-mail is attached as Exhibit 3.

11. Neither the February 7 nor the February 11, 2025, e-mails provided an explanation for the repeated charges of infringement or reasoning for the demands in the "required" licensed agreement. No claim charts were provided. Neither e-mail explains what claims of the '974 Patent are allegedly infringed by V & M's "Wild Bug" fishing lures.

12. V & M's "Wild Bug" fishing lures do not infringe the '974 Patent.

## PROSECUTION HISTORY OF THE '974 PATENT

13. The '974 Patent has a long patent prosecution (examination) history. A copy of the '974 Patent's document and transaction history available through the online records of the U.S. Patent and Trademark Office ("Patent Office") is attached as Exhibit 4.

14. The '974 Patent is based on application Serial No. 11/602,088, which was filed on November 20, 2006.

15. The application was filed with 17 claims and 17 drawing figures illustrating several embodiments of the fishing lures.

16. On February 20, 2008, the Patent Office issued a first Office Action (examination report) rejecting all claims of the application as being anticipated over a design patent of *Williams* (US Des. 263,988) and being obvious over a combination of *Williams* and *Ito* (US 6860058).

17. Parks filed a response to the first Office Action on August 19, 2008. The response had claim amendments in Claim 1 stressing that "the <u>center portion having a lip that protrudes from the center portion</u>" provides a flange or ridge. Parks also added claims 18-33 to the application.

18. On November 19, 2008, the Patent Office issued a second Office Action stating, "This application contains claims directed to the following patentably distinct species Figs. 1-4; Figs. 5-6; Fig. 7; Fig. 8; Fig. 9; Figs. 10-11; Figs. 12-13; Fig. 14; Fig. 15; Fig. 16; Fig. 17. The species are independent or distinct because claims to the different species recite the mutually exclusive characteristics of such species. In addition, these species are not obvious variants of each other based on the current record."

19. On December 11, 2008, Parks responded "the Applicant elects the species shown in Figs. 1 -4."

20. The '974 Patent's Figs. 1-4, the elected embodiment of the fishing lure, are shown here:

-5-



Fig. 1

Fig. 3

Fig. 2

Fig. 4

21. The elected embodiment of Figs. 1-4 generally corresponds to the lure identified as the "Shad" lure in Parks' affidavit submitted to the Patent Office on August 19, 2008 as part of the response to the first Office Action. The "Shad" lure is shown here:



Shad

22. In the Park's affidavit of August 19, 2008, Parks contrasted his crescent-shaped "Shad" lures from paddle-style lures shown in photos A-E, stating, "the tails in the lures Shad and Toad bend back and take on a corkscrew shape, twisting and moving back and forth creating more action than lures A-E."

23. On March 19, 2009, the Patent Office issued a third Office Action, a final rejection, stating, "Because applicant did not distinctly and specifically point out the supposed errors in the

restriction requirement, the election has been treated as an election without traverse (MPEP § 818.03(a))."

24. In the third Office Action, the Patent Office indicated that "Claims 6-10, 12-14, 23-24, 27, 31-32 are withdrawn from further consideration pursuant to 37 CFR 1.142(b) as being drawn to a nonelected species, there being no allowable generic or linking claim. Election was made **without** traverse in the reply filed on 12/11/2008."

25. In the third Office Action, the elected claims were rejected as anticipated by and obvious in view of *Williams*.

26. On September 17, 2009, Parks filed a response requesting continued examination of the application and further narrowing the claims.

27. On November 13, 2009, the Patent Office issued a fourth Office Action rejecting the claims as being obvious over *Ditto* (US Des. 289,789) in view of *Garst* (US 5465523).

28. Parks filed a response on May 12, 2010 amending claims 1 and 21 to particularly point out that "the tail or member has an arcuate outside edge that is longer than the inside edge." In order to distinguish over a two-tail design of *Ditto* and a U-shaped tail of *Garst*, Parks argued that "the tail or member has an arcuate outside edge that is longer than the inside edge. The lip or flange is located at the outside edge. This is shown in Figs. 1-4, wherein the outside edge or surface 21 is shown and the gap 29 forms the inside edge." Parks also argued: "This is opposite of Applicant's invention, where the lip or flange is on the outside edge, not the inside edge of a **curved tail** or member. **Because of the curved shape**, the inside edge forms the leading edge of the tail or member as the lure moves through the water, while the outside edge forms the trailing edge" (emphasis added). **Parks thus confirmed that his claimed lure covers only curved tails.**

29. On June 28, 2010, the Patent Office issued a Notice of Allowance and the '974 Patent subsequently issued on July 28, 2010.

30. Upon information and belief, Parks did not file any divisional application with a claim set on any fishing lure shown in Figures 5-17, thereby abandoning the pursuit of non-elected embodiments. **That is, the lures shown in Figs. 5-17 of the '974 Patent are not protected.**

**V & M'S "WILD BUG" FISHING LURES**

31. V & M sells a line of lures called "Wild Bug."  One example of the "Wild Bug" lure is shown here:



32. Unlike the purported invention claimed in the '974 Patent, V & M's "Wild Bug" lures do not include a unitary-formed tail with the "center portion having an arcuate outside edge," or "curved outside edge," or of "crescent-shape," among other limitations claimed in the '974 Patent.

33. V & M's product, which features dual claw-like extensions, resembles more the "paddle-like" tails contrasted by Parks during examination of the '974 Patent. The structure of V & M "Wild Bug" lure does not meet the limitations of any valid claim of the '974 Patent.

34. As depicted above, the elected embodiment illustrated in Figs. 1-4 of the '974 Patent comprises a crescent-shaped one-piece or unitary-formed tail, whereas V & M's product features a two-part bifurcated claw- or paddle-shaped tail, which differs structurally and functionally from a unitary tail of the invention disclosed and claimed in the '974 Patent.

35. None of the V & M's "Wild Bug" lures infringe the claims of the '974 Patent.

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

36. V & M realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

37. Upon information and belief, Parks, in prosecuting the '974 Patent, responded to a restriction requirement under 37 C.F.R. § 1.142 by electing the embodiment depicted in Figures 1 through 4, without traverse.

38. Parks' election without traverse constitutes a waiver of the right to contest the restriction and a withdrawal of unelected embodiments from examination, as set forth in MPEP § 821.02.

39. The elected embodiment comprises a fishing lure having a body and a tail, wherein the tail is a unitary vertically oriented, crescent-shaped member with arcuate center portion, curved back toward the lure body. The one-piece tail includes a gap between the body and the tail, the gap extending from the curved outside edge to the arcuate center portion, with the outside edge being thicker than the center. The non-elected embodiments – including those shown in Figures 5-17 – were not examined, allowed, or pursued via divisional or continuation applications, and

therefore do not form part of the enforceable scope of the '974 Patent. V & M's "Wild Bug" lures, with paddle-like dual tails, differ materially from the elected embodiment.

40. Parks' election of one embodiment without traverse is a binding disclaimer of non-elected embodiments.

41. V & M's "Wild Bug" lure does not read onto the elected embodiment and cannot infringe any valid and enforceable claim of the '974 Patent under 35 U.S.C. § 271, as interpreted in light of the prosecution history admissions and the scope-limiting effect of Parks' election without traverse.

42. There exists an actual and justiciable controversy between V & M and Parks regarding the alleged infringement of the '974 Patent.

43. Plaintiff seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that it does not infringe any claim of the '974 Patent.

## NOTICE OF LITIGATION HOLD REQUIREMENT

51. Defendant is hereby notified that it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Defendant knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereinafter collectively referred to as "Potential Evidence").

52. As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally

or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, Android-based smart phones, Windows-based smart phones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of all of Defendant's agents or employees if Defendant's electronically stored information resides there.

53. Defendant is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to Defendant's claims and/or defenses. To avoid such a result, Defendant's preservation duties include, but are not limited to, the requirement that Defendant immediately notify its agents and employees to halt and/or supervise the auto-delete functions of Defendant's electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

**PRAYER FOR RELIEF**

**WHEREFORE**, V & M respectfully requests that this Court enter judgment in its favor and against Parks on all claims for relief asserted herein, as follows:

A. Declaring that V & M does not infringe any valid and enforceable claim of the '974 Patent;

B. Declaring that the allegations of infringement made by Parks are baseless and have been made in bad faith;

C. Ordering the payment of reasonable attorney fees in accordance with 35 U.S.C. § 285; and

D. Granting V & M such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

V & M demands trial by jury on all issues so triable.

Dated: October 1, 2025   RESPECTFULLY SUBMITTED,

/s/ Jared K. Rovira
Jared K. Rovira, LA Bar No. 39320
Gregory D. Latham, LA Bar No. 25955
Stephen M. Kepper, LA Bar No. 34618
INTELLECTUAL PROPERTY CONSULTING, LLC
400 Poydras Street, Suite 1400
New Orleans, LA 70130
Telephone: (504) 322-7166
Facsimile: (504) 322-7184
glatham@iplawconsulting.com
jrovira@iplawconsulting.com
skepper@iplawconsulting.com

*And*

/s/ *Thomas S. Keaty*
Thomas S. Keaty (#7666) – TA
KEATY LAW FIRM LLC
365 Canal Street, Suite 2410

New Orleans, Louisiana 70130
Tel.: (504) 524-2100
Fax: (504) 524-2105
tskeaty@keatypatentfirm.com

-13-